UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/17/26

MILWAUKEE ELECTRIC TOOL CORPORATION,

Plaintiff,

-against-

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT

Defendants.

26 Cv. 3253 (CM)

**ORDER DENYING PLAINTIFF'S MOTION TO DEEM SERVICE EFFECTUATED ON DEFENDANTS LOCATED ABROAD**

McMahon, J.:

Plaintiff Milwaukee Electric Tool Corporation ("Plaintiff" or "Milwaukee") brought a lawsuit against seventy-two defendants, all of whom are located abroad (in China or Hong Kong). Milwaukee accused the defendants of trademark infringement and false designation of origin pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Dkt. 1. Milwaukee also sought a temporary restraining order ("TRO"), which I denied. Dkt. 17. Milwaukee also made a motion for a preliminary injunction. Dkt. 25.

Milwaukee has now moved for an order deeming the defendants to have been properly served via electronic means.

For the reasons that follow, the motion is DENIED.

## BACKGROUND

Milwaukee alleges that the defendants sell t-shirts that say things like "Dewaukee," or "Milfwaukee," or "Mybackhurts." Underneath each of those words is the thunderbolt that is part of Milwaukee's trademark. Dkt. 12 at 6. To date, none of the defendants has entered an appearance. On October 16, 2026, Milwaukee voluntarily dismissed three of the defendants. Dkt. 43.

Milwaukee has alleged that the remaining sixty-nine defendants sell those shirts using "e-commerce stores" on a website called Temu. Dkt. 12 at 25-26 (Sealed "Schedule A"); Dkt. 26 at 6. Milwaukee also believes that the defendants use PayPal, Shop Pay, and Payoneer to process payments that they receive from the sale of the shirts. Dkt. 26 at 6; Dkt. 28 at 5. It has accused the defendants of providing false or misleading information to the payment processors to hide their true identities. Dkt. 26 at 6.

Milwaukee filed the complaint in this action with the court on April 22, 2026. Dkt. 1. Unfathomably, Plaintiff did not simultaneously ask the Clerk of Court to issue a summons – service of which on a defendant is the necessary predicate to commencing a lawsuit. No summons issued at that time.

The court issued an order on April 27, denying Milwaukee's request for the entry of a temporary restraining order but authorizing pre-suit discovery from Amazon, PayPal, and other financial sites with which defendants might have had an account/assets. Dkt. 17.

Milwaukee also sought permission to provide electronic notice to the defendants of its complaint and motion for a preliminary injunction. Dkt. 29. It did so because (1) the alleged infringers are based either in China or Hong Kong and (2) they purportedly provided misleading or incorrect physical addresses to the payment processors and the online platforms on which they sold their goods. Dkt. 31.

On May 4, 2026, Plaintiff moved for leave to serve its motion for a preliminary injunction via alternative (electronic) means, and also sought permission to take expedited discovery. Dkt. 20. That motion was granted in part on May 6, to the extent of authorizing expedited discovery in order to locate contact information for the defendants from the finance companies. The order also authorized service of the motion papers and supporting documents via email at any address that might be uncovered. It said nothing about authorizing service of a summons by alternative means. Dkt. 23.

Two months and some pre-suit discovery later, on July 14, Milwaukee moved for an order permitting electronic service of the motion for a preliminary injunction. Dkt. 29. Milwaukee explained that electronic notice was likely to reach the Defendants because online sellers were required to provide an email address to online platforms like PayPal, Alibaba, Amazon, and Temu when they register their accounts. Dkt. 31 at 2-3. The defendants then had to verify those email addresses by clicking on a link that the platform sends to them via email. *Id.* at 3. This meant that emails sent to those addresses were reasonably calculated to give defendants notice of the pending motion.

In an order dated July 16, the court authorized Milwaukee to provide the defendants with electronic notice of the motion for a preliminary injunction. Dkt. 33. But I cautioned, "Nothing in this Order authorizes alternative service of process of the Summons and Complaint or relieves Plaintiff of any obligation to effect formal service of process, including service pursuant to the Hague Service Convention, as applicable." *Id.*

On July 17, 2026, as authorized, Plaintiff provided electronic notice of the motion for a preliminary injunction to the defendant – by sending an email containing those documents to the defendants at the email addresses Plaintiff had located during pre-suit discovery. The text of the

email, which was transmitted on July 17, Dkt. 36, does not appear on the docket (or did not until the court sent a question about service of the summons to the Plaintiff – see Dkt. 49). It said the following:

> To whom it may concern,
>
> We write to inform you of a lawsuit that has been filed against you in the United States District Court for the Southern District of New York under the case number 26-cv-3253, by Milwaukee Electric Tool Corporation.
>
> A link that contains the Complaint and other documents has been enclosed with this letter for you to thoroughly read and understand the claims against you.
>
> 26-cv-3253 Court Documents

Dkt. 50. The summons could not possibly have been included among the "Complaint and other documents" that were "enclosed" in the link, because, on July 17, the Clerk had not yet issued a summons. Indeed, for reasons the court cannot fathom, Milwaukee did not even request the issuance of a summons (one for all defendants, apparently) until July 24 – a week after it sent this email to the defendants – and no summons issued until August 3. Dkt. 34, 35. The court's warning that it had not done away with Milwaukee's obligation to start the lawsuit by service of the summons on the defendants – and doing so properly – went unheeded.

No effort was made to obtain court permission to serve the summons – the necessary prerequisite to commencing a lawsuit – by alternative means once that document had issued. Indeed, Milwaukee made no effort to "serve" the summons by email even without court permission. Instead, on August 6, Milwaukee simply uploaded the summons to the link it had emailed to the defendants three weeks earlier. Milwaukee neither sent the defendants a new email that purported to "serve" the summons on any defendant nor notified the defendants that the link had been updated with additional documents relevant to the lawsuit. Dkt. 38, 50.

Milwaukee has now moved for an order declaring that all defendants have been properly served with process. Dkt. 39. But because process has never been served on any defendant, that motion must be DENIED.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Unless and until a defendant is served with a summons, it is not before the court; the informal notice of the motion, which was sent electronically with the court's permission, triggered no obligation to respond by a party that had not been properly served.[1] And as of today, no defendant has been properly served.

Prior to the making of the motion to deem service of process effected by email, the court has not previously authorized service "of process" – that is, of a summons and complaint – either by email or by any other alternative method. The limitation on my order dated July 16, 2026, was clear. Dkt. 33. I told the Plaintiff that it could send the entities it wished to sue notice of its intent to move for a preliminary injunction via email – nothing more. I specifically warned the Plaintiff that it was not excused from effecting actual service of process on the defendants and reminded Plaintiff that I had not authorized alternative service "of the summons and complaint." Milwaukee ignored that warning at its peril.

I cannot and will not retroactively deem the emails sent to the defendants to be proper and effective service of process, for multiple reasons.

First and foremost, none of the defendants was sent an email that included a summons. The only emails sent to the defendants were sent on July 17 (Dkt. 38, 50) – well before the Clerk of

[1] In its July 16 order (Dkt. 33), the court set a deadline for responding to the preliminary injunction motion, but that schedule was only binding -- could only have been binding -- on a party that was actually served with process – i.e., a summons and complaint.

Court issued any summons. So even if the court had authorized alternative service of process on the defendants, Plaintiff has not served any of them with process. Sneaking a belatedly-requested summons into a link that was never re-sent did not effect service; Milwaukee's ploy appears to have been an effort to hoodwink the court into thinking that the defendants were sent a summons, when they were not.

The fact that alternative service was never authorized as to any defendant, and that no summons was ever transmitted to any defendant, is enough to dispose of this motion. However, I must also note that, as to the defendants who are located in Hong Kong, there is no way for Milwaukee to effect service of process without complying with the Hague Service Convention ("the Convention"). And while the Hague Convention may not apply to the Chinese defendants, because their physical addresses are unknown, unless and until the court authorizes alternative service on those defendants, and the summons is delivered to them per a court order that has yet to issue, they have not been properly served, with process or anything else.

## I. Federal Rule of Civil Procedure 4 & The Hague Convention

### A. Federal Rule of Civil Procedure 4

Federal Rule of Civil Procedure 4 governs the manner in which individuals and corporations may be served process in a foreign country. Under Rule 4(f)(1), an individual may be served outside of the United States, "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Rule 4(h)(2) permits a foreign corporation, partnership, or association to be served in "any manner prescribed by Rule 4(f) for

serving an individual." In short, where the Hague Convention applies, it provides the means by which a foreign corporation may be served.

**B. The Hague Convention**

Formally known as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the Convention was developed in 1965 and ratified by the United States in 1967. Its intent was to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). To do so, the Convention created a variety of "appropriate means" to serve documents on parties located within a contracting party. *Convention Done at the Hague Nov. 15, 1965*, 20 U.S.T. 361.

The primary means a plaintiff can serve documents abroad is via each country's "Central Authority" that receives "requests for service coming from other contracting States," 20 U.S.T. 361, Art. 2, and then serves "the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). The Convention provides additional alternatives to service that do not require the intervention of the receiving country's Central Authority. 20 U.S.T. 361, Art. 8-11, 19. One of those alternative methods is particularly relevant here, Art. 10(a), and it will be discussed in greater detail below.

If a corporation resides in a country that has acceded to the Convention, it must be served in accordance with the rules set out in the Convention. That is because the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial...document for service abroad." 20 U.S.T. 361, Art. 1. The Supreme Court has similarly

held that compliance "with the Convention is mandatory in all cases to which it applies." *Schlunk*, 486 U.S. at 705.

Two provisions of the Convention are relevant here. First, the Convention provides a carve-out to its own jurisdiction. Even though the Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial…document for service abroad," it "shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. 361, Art. 1. Second, when it applies and if the "State of destination does not object," the Convention "shall not interfere with" "the freedom to send judicial documents, by postal channels, directly to persons abroad." *Id.*, Art. 10(a).

## II. The Hong Kong-based Defendants Must Be Served in Accordance with the Hague Convention

Panoramic, Milwaukee's investigator, found physical addresses for the two remaining defendants who are based in Hong Kong. Dkt. 41 at 3. The Convention thus applies, because Hong Kong is a signatory, and the addresses of the defendants are known.

Even though Hong Kong is a Special Administrative Region of China, its posture towards the Convention is not identical to that of mainland China. Under Article 10(a), the "Convention shall not interfere with…the freedom to send judicial documents, by postal channels, directly to persons abroad," if the "State of destination does not object." Hong Kong, unlike China, does not object to service of judicial documents via postal channels. *Compare* Hong Kong's Response to the December 2022 Questionnaire relating to the Convention at ¶ 23, https://perma.cc/S9RY-782M (not objecting to service under Art. 10(a)), *with* China's Response to the December 2022 Questionnaire relating to the Convention at ¶ 23, https://perma.cc/6Y3K-75L4 (objecting to

service under Art. 10(a)). The State Department has also confirmed that service of process by mail is lawful in Hong Kong. It has explained that Hong Kong has made no "reservations with respect to service by international registered mail." U.S. Dep't of State, Hong Kong Judicial Assistance Destination Information, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (last accessed Nov. 10, 2026).

Milwaukee argues that because Hong Kong allows for service via "postal channels," it also allows for service via email. Dkt. 40 at 8-10. That is incorrect. Drafted in 1965, the Convention understandably does not mention email. The Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash,* 581 U.S. at 273 (quoting *Schlunk*, 486 U.S. at 699). The Second Circuit recently held that "email service is one such 'inconsistent method[]' preempted by the Convention." *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 171 (2d Cir. 2025). *Smart Study* explicitly rejected the argument that Article 10(a)'s "postal channels" encompass service via email so long as there is not "some *other* prohibition" on email. *Id.* at 170 (emphasis in original).

Here, Milwaukee makes the same argument that the Second Circuit rejected in *Smart Study*. It suggests that the Convention permits service via email on corporate defendants in Hong Kong because Hong Kong permits service via "postal channels" and Hong Kong has not affirmatively rejected service via email. Dkt. 40 at 8-10. That argument is foreclosed by *Smart Study* which held that the Convention's silence regarding email cannot be mistaken for a license to use it. "Reading into the Convention's silence implicit permission for all types of service not affirmatively barred would render meaningless its 'approved methods of service,' encouraging end-runs around the very system it created." *Smart* Study, 164 F.4th at 171 (citing *Water Splash*, 581 U.S. at 273). The

Convention prohibits what it does not explicitly permit, and "email service is one such 'inconsistent method[]' preempted by the Convention." *Id.*

Courts in this district have interpreted *Smart Study* in the same way. "Where the Hague Convention applies," as it does here, "a defendant may only be served by one of the methods of service enumerated therein; and not by any alternative means, including, as relevant here, by email." *Foxmind Canada Enters. Ltd. v. APROAT*, 2026 WL 412645, at *2 (S.D.N.Y. Feb. 13, 2026). In *York Town I LLC, v. El Sherif*, 2026 WL 1162420, at *2 (D. Conn. Apr. 29, 2026), the Plaintiff tried to effect service via email on a defendant in Colombia. Colombia, like Hong Kong, does not object to service via "postal channels." Nevertheless, "email service upon the Colombia Defendants is prohibited under the Second Circuit's holding in *Smart Study*." *Id.*

There are other provisions of the Convention that might authorize service via email, but Milwaukee does not argue that they are applicable here. Under Article 11, Hong Kong and the United States could agree to provide for service via email between the two countries. But there is no evidence that such an agreement exists. Under Article 5, the Convention would permit service via email if it were permissible under Hong Kong's domestic law. Milwaukee has not argued that Hong Kong has authorized such a method of service.

Here, Hong Kong is a signatory to the Convention and the defendants' addresses are known. Hong Kong has not objected to service via postal channels. Milwaukee has requested service via email which is a method "inconsistent" with the Convention. *Smart Study*, 164 F.4th at 171. Milwaukee's motion to deem service effectuated on the Hong Kong-based defendants is DENIED. It must serve the Hong Kong-based defendants with the summons and complaint via some method permitted by the Convention. Until it does so, it has not sued those defendants and

its efforts to make motions directed to them are a nullity. For avoidance of doubt, despite any previous order that might be read to the contrary, the court orders that any motion to which a properly served Hong Kong defendant is expected to respond be re-served, and to be re-served in a manner that is consistent with the Hague Convention – and, by email as well. Proof of service must be filed separately as to each Hong Kong defendant. A response to any motion that is transmitted to a Hong Kong defendant that has been properly served with a summons and complaint (i.e., in accordance with the Hague Convention) will be due 21 business days after proof of service is filed on the docket of the court.

## III. Deeming Milwaukee's Motion to be a Motion for Leave to Serve the China-based defendants by Alternative (Electronic) Means, that Motion is Granted

The United States and China are both contracting parties to the Convention. See Hague Conf. on Priv. Int'l L., Status Table: *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last accessed Nov. 9, 2026). Under normal circumstances, this means that a party located in China must be served in a manner authorized by the Convention.

Milwaukee argues that the Convention does not apply to the China-based defendants because their addresses are "not known," 20 U.S.T. 361, Art. 1. Dkt. 40 at 5. Courts in this Circuit have concluded that an address is "not known" "if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so."

*Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022) (collecting cases).

In its papers in support of the motion to deem the China-based defendants served – which motion is DENIED – Milwaukee provides all the information needed for the court to decide the motion that Milwaukee should have made (which is a motion for leave to effectuate service of process by electronic means). That being so, I will treat Milwaukee's motion at Docket #39 as a motion for leave to serve the China-based defendants by alternative (electronic) means. That motion is GRANTED. Such service has not yet been effected, however; Milwaukee must do the necessary, including specifically serving each China-based defendant with a summons. And it must provide proof of service separately for each China-based defendant.

### A. Milwaukee's prior electronic notices did not effect service on the China-based defendants, so the motion for a declaration that process has been served is Denied.

Service of the summons is necessary before a court can exercise personal jurisdiction over the defendants. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1999); *Omni Cap.*, 484 U.S. at 104.

Milwaukee has never served any defendant, whether based in China or Hong Kong, with a summons. It has only provided electronic notice of the complaint and the motion for a preliminary injunction. The court's July 17 order was quite specific in saying that I was NOT authorizing service of a summons by alternative means. Dkt. 33. The Court's order authorizing electronic notice of the complaint, the motion for a preliminary injunction, and supporting documents did not relieve Plaintiff "of any obligation to effect formal service of process, including service pursuant to the Hague Service Convention, as applicable." *Id.* And it is the service of the summons on the defendant -- not the defendant's mere knowledge of the lawsuit -- that gives a court jurisdiction

over the defendant. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978).

On July 17 – prior to the issuance of the summons on August 3 – Milwaukee sent an email to the China defendants' email addresses, which it had obtained from third party service providers in pre-suit discovery. Dkt. 38, 50. That email contained a link to the complaint, the request for a preliminary injunction, and a scheduling order. Dkt. 38, 50. On August 6 – after the issuance of the summons on August 3 – all Milwaukee did was upload the summons to the on-line link containing the rest of the documents. Dkt. 38, 50. Milwaukee did not send an additional email notifying the defendants that a summons had been added to the link, let alone re-send the link to any of the China-based defendants. Dkt. 38, 50.

Pursuant to Rule 4(c)(1), "a summons must be served with a copy of the complaint." Service of process is defective "where a plaintiff serves a complaint without a summons or a summons without a complaint." *Buon v. Spindler*, 65 F.4th 64, 74 (2d Cir. 2023). Assuming that the defendants opened the link when it was first sent on July 17, they would not have been aware that a lawsuit had been commenced, because no summons was contained therein. And absent a new communication from Milwaukee, the defendants would have no reason to check the link on or after August 6, when Milwaukee finally uploaded the summons. That second, silent upload went through the motions of service without actually effecting it. When "notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950).

Courts have authorized service of the summons via email when the defendant's location is "not known" within the meaning of the Convention. As we will discuss below, the location of the China-based defendants is in fact "not known." But in all of those cases, the summons was

transmitted in the email itself -- not quietly inserted into a link that was emailed weeks before there even was a summons to serve. *Zieske v. 53Wuyongquan*, 2026 WL 579401 (S.D.N.Y. Mar. 2, 2026) authorized "emailing a copy of the Summons and Complaint." *Id.* at *3. *Foxmind,* 2026 WL 412645, at *4, similarly held that the Plaintiff's emailing of the Summons and Complaint constituted valid service. *See also Foxmind,* 25-CV-466 (JSR), ECF 15 at 14. In *Kelly Toys*, 2022 WL 3701216, service was effectuated when the plaintiff "emailed the TRO, summons, and Complaint," to the defendants. *Id.* at *4, *9.

Milwaukee's motion to deem that the China-based defendants have been served with process is, therefore, DENIED.

### B. Because The Hague Convention does not apply to the China-based defendants and Milwaukee exercised reasonable diligence in trying to locate physical addresses for the China-based defendants, the Court will authorize alternative service on those Defendants

Plaintiff has credibly attested that it was reasonably diligent in its attempt to discover a physical address for the China-based defendants, and it failed to find one. In a sworn declaration, the operations manager of Panoramic Consulting Limited ("Panoramic"), a firm hired by Milwaukee, attested that: Panoramic is a company specializing in public-record research, business-information research, big-data analysis, and investigative work concerning online merchants, product sources, and related identifying information. Dkt. 41 at 1. Panoramic reviewed the addresses supplied by the sellers to the online marketplaces, and it searched business information and government-record resources including Tianyancha. *Id.* at 2. Tianyancha is a widely used Chinese commercial business-information database that aggregates corporate records and other publicly available information from authoritative sources. Dkt. 40 at n.1. Panoramic also reviewed mapping resources including Baidu Maps and Google Maps to search for company names and

physical addresses to determine whether the stated company or seller could be associated with each location. Dkt. 41 at 2. If Panoramic found a number associated with the seller, it called that number or sent a text message. *Id.* Panoramic also reviewed whether the sellers had been de-registered. *Id.*

Panoramic stated that it was unable to find any physical location for the sixty-seven China-based defendants. It found that some of the entities were de-registered or dormant, some entities were reported as no longer being at their listed address, some telephone numbers were no longer in service while calls to others went unanswered, some telephone numbers led to an individual who denied an affiliation with the identified identity, and some addresses or entities could not be located using a variety of mapping platforms. *Id.* at 3. Panoramic provided a chart summarizing the results of its research. Dkt. 41-1 at 2-11.

These extensive efforts, relying on multiple sources of information, satisfy the "reasonable diligence" test. I thus conclude that the addresses for the China-based defendants are "not known" within the meaning of the Convention.

Courts in this district have held that a plaintiff exercised "reasonable diligence," when it made efforts similar to those described by Panoramic. For example, the plaintiff in *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018), exercised reasonable diligence when it researched the defendants' websites, "completed multiple Internet-based searches, called known phone numbers, and conducted in-person visits where reasonable." *Id.* at *4. In *Foxmind*, 2026 WL 412645, at *3, the plaintiff exercised reasonable diligence when it showed that Chinese defendants had completed deregistration procedures, and "therefore are no longer in operation and have no associated addresses." *Zieske,* 2026 WL 579401, concluded that the plaintiff had conducted reasonable diligence when its investigator "performed

searches on China's National Enterprise Credit Information Publicity System, Baidu.com, and Qichacha.com, to authenticate the business entity and address of each Defendant." *Id.* at *2.

Because the China-based defendants' addresses are not known, the Hague Convention does not apply. Pursuant to Rule 4(f)(3), Milwaukee is permitted to serve the China-based defendants "by other means not prohibited by international agreement, as the court orders." Service under Rule 4(f)(3), must, of course, also comply with due process. *See Kelly Toys,* 2022 WL 3701216, at *9; *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015).

Here, service via email is not prohibited by the Convention because the Convention does not apply. As noted above, courts routinely grant permission to serve defendants who have no known physical address by email. Entry of an order authorizing service in this manner on the China-based defendants (but not the Hong Kong-based defendants) is an appropriate way of formally commencing this lawsuit.

For these reasons, the court authorizes service of process by email on the China-based defendants. Service means service of the summons and complaint. I expect proof of service to be placed on the docket for each served defendant separately. As was the case with the Hong Kong defendants, a response to any motion that is transmitted to a Hong Kong defendant that has been properly served with a summons and complaint (i.e., in accordance with the Hague Convention) will be due 21 business days after proof of service is filed on the docket of the court.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to deem service of process to have been properly effectuated on the defendants is DENIED in its entirety.

The Hong Kong defendants must be served individually in accordance with the Hague Convention.

For the reasons stated in the text of this opinion, the court deems Milwaukee to have moved for permission to effect service of process by email on the China defendants, and GRANTS that motion, subject to the filing of separate proofs of service with respect to each individual defendant.

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 39 from the Court's list of open motions.

This constitutes the decision and order of the Court. It is a written decision.

Dated: November 17, 2026

U.S.D.J.